THE UNION TRUST COMPANY, Defendant in Error, *vs.* CHARLES W. SHOEMAKER, Plaintiff in Error.

*Opinion filed April 19, 1913—Rehearing denied June 5, 1913.*

1. BONDS—*replevin bond is given in contemplation of the ordinary course of judicial proceedings.* A replevin bond is intended to indemnify the party actually interested at the time the judgment shall be recovered, against the wrongful prosecution of the supposed cause of action, and the possible exercise of the court's power of amendment and the substitution of parties are within the contemplation of the obligors when the bond was executed.

2. SAME—*when judgment on replevin bond is binding upon estate of deceased partner.* Where a partnership begins a replevin suit and the members of the partnership execute the customary replevin bond, the subsequent substitution of the defendant's assignee as defendant, and the death of one of the partners before the judgment in the replevin suit was entered, which was in favor of the substituted defendant and against the surviving partners, do not release the estate of the deceased partner from liability on the bond.

3. EQUITY—*when parties are not obliged to first resort to remedy at law.* An original proceeding in equity against the estate of a deceased partner to enforce his liability upon a partnership contract may be maintained without first pursuing a remedy at law, as his estate is primarily liable in equity on such a demand.

4. EXECUTORS AND ADMINISTRATORS—*scope of statute authorizing claims not due to be presented.* The provision of section 67 of

the Administration act, which provides that a claim not due may be presented and allowed with a proper rebate of interest, has reference only to claims upon which there is an absolute liability although time of payment is postponed, and does not refer to claims dependent upon a contingency which may or may not ripen into a liability.

5. SAME—*effect where claim remains contingent during whole period for filing claims.* If a claim against a deceased person remains contingent for the whole period fixed by statute for presenting claims against his estate, the claimant cannot afterwards participate in the distribution of assets by the personal representative unless he finds estate of the deceased not inventoried or accounted for.

6. SAME—*when liability is contingent.* Where a replevin suit begun by a partnership, in which the partners executed a replevin bond, is not tried until after the full period allowed by statute for filing claims against the estate of one of the partners who died shortly after the execution of the bond, the liability of the deceased partner on the bond is contingent during such time, as there could be no breach of the condition of the bond until the final judgment in the replevin suit.

7. SAME—*remedy of holder of an unpresented contingent claim.* The limitation fixed by statute for presenting claims against an estate does not extend to actions against the heirs, devisees or legatees to subject property of the estate received by them to the payment of claims which were contingent during the whole period for presenting them, and such actions, if otherwise maintainable, are subject only to the general Statute of Limitations.

8. SAME—*when creditor may pursue assets of estate into hands of distributees.* Creditors who have not been guilty of *laches* may pursue the assets of the estate into the hands of the distributees where distribution has been made without payment of their claims.

9. SAME—*remedies given by Statute of Frauds are cumulative.* The remedies given by sections 11, 12, 13 and 14 of the Statute of Frauds to creditors against the heirs and devisees of deceased persons are cumulative and were not intended to take away or limit the remedies theretofore existing.

10. SAME—*when claim against estate may be enforced against legatees.* Where a claim against a deceased person has remained contingent during the whole period allowed by law for presenting claims against the estate and does not ripen into an absolute liability until the estate has been distributed to the legatees under the will, the claimant may maintain a bill in equity against such legatees to reach the property of the estate received by them.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

JOHN T. RICHARDS, for plaintiff in error.

KRAUS, ALSCHULER & HOLDEN, (M. M. RILEY, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This case comes to this court through the allowance of a writ of *certiorari* petitioned for by Charles W. Shoemaker, individually and as executor of the will of Elizabeth Shoemaker, to review a judgment of Branch "D" of the Appellate Court for the First District affirming a decree of the circuit court of Cook county against the plaintiff in error, individually and as executor, together with Charles D. Bull, for the sum of $20,276.66, being the balance due on a judgment for $39,381.45 recovered by defendant in error on December 29, 1905, in the circuit court of Gogebic county, in the State of Michigan, against Edgar R. VanBuren and Charles D. Bull, surviving partners of Walter Shoemaker, doing business under the firm name of Antigo Lumber Company.

On December 2, 1890, Walter Shoemaker, Charles D. Bull and Edgar R. VanBuren, partners doing business as the Antigo Lumber Company, began an action of replevin in the circuit court of Gogebic county, Michigan, against Wilson R. Stubbings and John J. McLaughlin. The sheriff, under the writ, took possession of a large amount of lumber and delivered it to the plaintiffs, having first, in compliance with the Michigan statute, taken from them a bond, signed by Walter Shoemaker on behalf of himself and his partners, and by D. L. Plumer and Walter Alexan-

der as sureties, in the sum of $40,000, conditioned that if Shoemaker, Bull and VanBuren should prosecute the replevin suit to effect, and if the defendants should recover judgment against the plaintiffs, then, if the plaintiffs should return the property, if the return thereof were adjudged, and should pay to the defendants all such sums as might be recovered by the defendants against them, the obligation was to be void, otherwise to remain in full force and effect. During the pendency of the replevin suit, on February 19, 1900, the defendant in error, the Union Trust Company, became the owner of the interest of the defendants in the cause of action and the property replevied and was made a party defendant. On August 18, 1900, Walter Shoemaker died in Chicago. His death was suggested of record, and the replevin suit was afterward carried on in the name of Bull and VanBuren, as surviving partners. In December, 1905, the replevin suit was tried and a verdict was rendered in favor of the defendant in error, finding that it was the owner of the property and entitled to the benefit of any recovery had. The defendant in error having, in accordance with the Michigan statute, waived the return of the property replevied and prayed for a judgment for its value, the damages were assessed by the jury at $39,381.45, and judgment was rendered in favor of the defendant in error for that amount. An execution was issued and returned unsatisfied, and thereupon, in pursuance of the Michigan statute, the sheriff assigned the replevin bond to the defendant in error, authorizing it and its successors and assigns to recover any amount due upon the bond.

Walter Shoemaker left a will, by which he devised the residue of his estate to his wife, Elizabeth, and his son, Charles W. Shoemaker, in equal shares. On September 28, 1900, the will was admitted to probate in the probate court of Cook county, Illinois, and letters testamentary were issued to the widow and son. Notice to creditors was published, fixing the November term, 1900, as the time for the

presentation of claims. No claim was presented by the
Union Trust Company or by its assignors, and no suit was
brought by either against the executors prior to their dis-
charge. On February 18, 1901, the executors filed an in-
ventory, showing certain real estate in Ridgeland, Illinois,
of the value of $1000; an undivided one-half interest in
certain real estate in South Dakota, of unknown value, the
other undivided one-half being owned by A. D. Marriott,
who was the partner of Walter Shoemaker; and personal
estate of the value of $95,000. In the enumeration of this
personal estate was mentioned an undivided one-half inter-
est in the partnership of A. D. Marriott & Co. of an esti-
mated value of $50,000. On September 28, 1904, the final
account of the executors was filed and approved and they
were ordered discharged. The widow and son took the
residue of the estate in equal shares, which amounted to
more than the amount here sought to be recovered. This
bill to enforce the payment of the judgment was filed De-
cember 28, 1906, against Charles W. Shoemaker and Eliza-
beth Shoemaker, individually and as executor and executrix
of the estate of Walter Shoemaker, and Charles D. Bull and
Edgar R. VanBuren. In October, 1907, Elizabeth Shoe-
maker died, leaving a will, which was admitted to probate,
in which she devised her estate to her son, Charles W. Shoe-
maker, and named him as executor. Letters testamentary
were issued to him, her death suggested, and he was made
defendant in her stead, as executor. On November 7, 1907,
the defendant in error received from Plumer and Alexan-
der, the sureties on the replevin bond, $25,000. On Janu-
ary 24, 1908, VanBuren was discharged in bankruptcy.
The decree found that Charles W. Shoemaker, individually
and as executor of the will of Elizabeth Shoemaker, and
Bull, were severally liable for the total amount due, and
dismissed the bill as to VanBuren because of his discharge
in bankruptcy, and as to Charles W. Shoemaker, executor
of the will of Walter Shoemaker, because all the assets had

been accounted for and paid out under the order of the probate court of Cook county.

Walter Shoemaker having died before judgment in the replevin suit, no judgment was rendered against him or his estate. It is insisted that therefore the judgment was not evidence against his estate of any liability and that the circuit court erred in considering it. The basis of this proceeding was the bond, which was conditioned for the payment of all such sums of money as might be recovered against the plaintiffs in the replevin suit. The judgment was evidence that it was recovered in that suit, and was properly received and considered as fixing the amount which the bond bound the plaintiffs to pay. The death of Walter Shoemaker did not change the liability of his estate upon the bond. That was the same as his liability would have been if he had lived. The judgment was rendered, not in favor of the original defendants or against all the original plaintiffs as individuals, but in favor of a substituted defendant and against the surviving partners, only. The substitution of the defendant in error was in accordance with the statute. The plaintiff in the replevin suit was the partnership known as the Antigo Lumber Company. After Shoemaker's death the plaintiff was still in court in the person of the surviving partners. The bond was given in contemplation of the ordinary course of judicial proceedings, in which the court may permit amendments changing the parties or otherwise amending the proceedings, provided no new cause of action is introduced. The object of the bond was to indemnify the party actually interested at the time judgment should be rendered, against the wrongful prosecution of that supposed cause of action, and the possible exercise of the power of amendment and substitution of parties must be regarded as within the contemplation of the obligors when it was executed. (*Hanna* v. *International Petroleum Co.* 23 Ohio St. 622; *Becovitz* v. *Sapperstein,* 46 Ind. App. 339; *Bierce* v. *Waterhouse,* 219 U. S. 320.)

The judgment in favor of the defendant in error was a breach of the bond, for which the obligors, including the estate of the deceased principal, were bound to answer.

It is contended that equity is without jurisdiction of the bill because it is in the nature of a creditor's bill or a bill of discovery, which will not lie until the remedy at law has been exhausted by the procuring of a judgment and execution. The bill is not, however, of that character, but is an original proceeding against the estate of a deceased partner to enforce his liability upon a partnership contract, in which case the estate is primarily liable in equity, which may be resorted to in the first instance. *Doggett* v. *Dill*, 108 Ill. 560; *Mason* v. *Tiffany*, 45 id. 392; *Ladd* v. *Griswold*, 4 Gilm. 25; *Nelson* v. *Hill*, 5 How. 127.

Walter Shoemaker's estate having been finally settled more than two years before the filing of this bill without any claim having been presented against his estate, plaintiff in error insists that the claim is barred by section 70 of the Administration act, except as to property not inventoried. That section, prior to its amendment in 1903, by its seventh clause, provided that all demands not exhibited within two years from the granting of letters should be barred except as to estate not inventoried or accounted for. Section 67 provides that a claim not due may be presented and allowed, with a proper rebate of interest. This section refers only to claims on which there is an absolute liability though the time of payment is postponed, but has no reference to claims dependent upon a contingency which may or may not ripen into a liability. The holder of a claim of the latter class is not a creditor of the estate under the statute and cannot have his claim allowed. If his claim remains contingent during the whole of the two years allowed for the exhibition of claims against the estate, he cannot participate in the distribution by the administrator unless he finds estate of the deceased not inventoried or accounted for. (*Stone* v. *Clarke*, 40 Ill. 411; *Dugger* v. *Oglesby*, 99 id.

405; *Snydacker* v. *Swan Land and Cattle Co.* 154 id. 220; *Mackin* v. *Haven,* 187 id. 480; *Pearson* v. *McBean,* 231 id. 536.) That Shoemaker's liability on the bond was contingent is manifest, for there could be no breach of the condition until judgment in the action, which was not until more than two years after distribution and settlement of the estate.

It does not follow, however, because the claim may not share in the distribution by the administrator, that the holder is barred from pursuing the assets, real or personal, into the hands of the heirs, devisees or legatees. Such conclusion would follow if the claim had been of such a character that it could have been presented to and allowed against the administrator. The law having given a remedy in such case, it must be pursued. But the limitation established by section 70 of the statute is not a general limitation upon all remedies against the property of deceased persons. The Administration act is a specific act adopted for the particular purpose of facilitating the early settlement of the estates of deceased persons. (*Waughop* v. *Bartlett,* 165 Ill. 124.) Demands against such estates must be exhibited within two years from the grant of administration, but where the demand is of such a nature that it is during all of such period of two years merely a contingent liability and not a fixed obligation of the estate, it cannot be allowed or considered in the settlement of the estate by the administrator. This limitation, which has been reduced to one year by the amendment of 1903, does not, however, apply to actions against heirs, devisees or legatees to subject property of the estate received by them to the payment of contingent liabilities of the deceased. Such actions, if otherwise maintainable, are subject only to the general Statute of Limitations. *Ryan* v. *Jones,* 15 Ill. 1; *Dugger* v. *Oglesby, supra; Snydacker* v. *Swan Land and Cattle Co. supra; Mackin* v. *Haven, supra; Morse* v. *Pacific Railway Co.* 191 Ill. 356.

Sections 11, 12, 13 and 14 of our Statute of Frauds provide certain remedies for creditors against the heirs and devisees of deceased persons, but they were not available to the defendant in error because there was no deficiency of personal assets. This suit is not brought and could not be maintained under those sections or either of them. If maintainable at all, it is under the original jurisdiction of the court of chancery over the estates of deceased persons, whereby that court could reach property that should be applied to the payment of debts. The remedies given by the statute were intended to enlarge, and not to take away or limit, the remedies theretofore existing. Former remedies were not superseded but additional and cumulative remedies were created. (*Mackin* v. *Haven, supra.*) If creditors had the right, in the absence of the statute, to compel legatees to refund, the statute has not deprived them of that right. On this subject it is said by Justice Story (1 Eq. Jur. sec. 92): "Legatees are always compellable to refund in favor of creditors, because the latter have a priority of right to satisfaction out of the assets." And again (vol. 2, sec. 1251): "Another illustration of implied trusts may be found in the common case of a suit in equity by a creditor of an estate to recover his debt from legatees and distributees who have received payment of their claims from the executor acting by mistake but *bona fide* and without fault, before a due discharge of all debts. * * * He has a clear right in equity, in such case, to follow the assets of the testator into their hands as a trust fund for the payment of his debt. The legatee and distributee are in equity treated as trustees for this purpose, for they are not entitled to anything except the surplus of the assets after all the debts are paid." In *Noel* v. *Robinson,* 1 Vern. 90, and *Newman* v. *Barton,* 2 id. 205, it is stated that the common justice of the court will compel a legatee to refund, and that a creditor shall follow the assets in equity into whosoever's

hands they come. The administration and settlement of estates is an acknowledged branch of jurisdiction of courts of chancery in appropriate cases. (*VanSyckle* v. *Richardson*, 13 Ill. 171; *VanMeter's Heirs* v. *Love's Heirs*, 33 id. 260; *Elting* v. *First Nat. Bank*, 173 id. 368.) It is an established doctrine of equity that creditors who have not been guilty of *laches* may pursue the assets into the hands of the distributees where distribution has been made without discharging their debts. *Public Works* v. *Columbia College*, 17 Wall. 521; *Williams* v. *Gibbes*, 17 How. 239; *Continental Nat. Bank* v. *Heilman*, 81 Fed. Rep. 36; *David* v. *Frowd*, 1 Myl. & K. 200; *Sawyer* v. *Birchmore*, 2 Myl. & Cr. 612.

Although no action at law lies, or ever did lie, against distributees of personal property, whether legatees or heirs, for a debt of the ancestor, the ancient remedy by a bill in equity for a discovery, if necessary, and an account of assets received applicable to the payment of the decedent's debts, still continues. This jurisdiction had its origin not only in the general authority over trustees and trusts, but in the imperfect and defective power of the ecclesiastical courts. It was sufficient that a debt existed against the estate of a decedent and that there was property which should be applied to its payment to justify the interposition of the court of equity, but where distribution had been made another creditor could not ask for a return of the money or a proportional part from the distributees if he had received notice of the proceedings or had been guilty of *laches* or unreasonable delay. (*Public Works* v. *Columbia College, supra.*) No question can exist of the validity of the excuse for the failure of the defendant in error to present its claim to the administrator before distribution, or of the equity of the position that the legatee who is a volunteer should not retain the property of the estate while a creditor goes unpaid.

Since the personal property received by each of the legatees exceeds the amount of the decree, it is unnecessary to consider the questions argued in regard to the real estate in Illinois and South Dakota.

The decree was right, It is affirmed.

*Decree affirmed.*