Phyllis BERLIANT, Transferee,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

Florence KRAFT, Transferee,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

Nos. 83–1413, 83–1414.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1983.

Decided March 5, 1984.

Rehearing and Rehearing En Banc
Denied April 4, 1984.

Richard Kates, Chicago, Ill., for petitioners-appellants.

Thomas M. Preston, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

CUMMINGS, Chief Judge.

This is an appeal by Florence Berliant Kraft (Kraft) and Phyllis Berliant (Berliant) from a decision of the United States Tax Court finding Kraft, Berliant and Irene Berliant Magill[1] liable for unpaid taxes of the estate of decedent Rae Berliant (Rae). *Magill v. Commissioner*, 51 TCM (P-H) ¶ 82,148 (filed March 24, 1982) (App. 1–53). Tax Court Judge Dawson determined that the estate tax owed was $67,-294.85 plus interest and that the parties were each liable for the tax to the extent of the value of assets received (App. 54). Kraft and Magill, transferees of both probate and non-probate assets, were each held liable for the entire amount (App. 54). Berliant, transferee[2] of only probate assets, was held liable for $46,000 plus interest (App. 56). The government, Kraft and Magill stipulated that "the payment of the entire liability of the transferor in the amount of $67,294.85 plus interest * * * by any one or a combination of the petitioners [Kraft, Berliant and Magill] liable therefor" would discharge the liability of all although Berliant need pay no more than $46,000 plus interest (App. 54–57).

I

Rae Berliant, mother of Ernest Berliant, Sidney Berliant (husband of Phyllis), Florence Kraft, and Irene Magill, died testate on November 4, 1964. Although a Federal estate tax return was due to be filed on February 4, 1966, none was filed until December 16, 1971. In the tax return finally filed, Rae's gross estate was valued at $135,897.01 (Govt. Br. 3). On reviewing the return, the Internal Revenue Service determined that various properties had been improperly excluded from the gross estate[3] and therefore not reported on the estate tax return nor included in calculations to determine the amount of any estate tax due. The I.R.S. decided that there was a $67,550.63 deficiency in Rae's estate taxes and, because of the late filing without reasonable cause, an addition to tax of $16,887.66 (App.2). The I.R.S. asserted that Magill, Kraft, and Berliant were each liable for the entire amount of the tax and addition to tax. Magill, Kraft and Berliant challenged the I.R.S. in the Tax Court. The Tax Court decided: (1) that Magill and Kraft as transferees and Berliant, widow of Sidney Berliant, as a transferee of a transferee were liable under I.R.C. § 6901(a)[4] for unpaid estate tax with re-

---

[*] The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Irene Berliant Magill, executrix of Rae Berliant's estate, did not file a notice of appeal from the Tax Court decision and therefore is not a party to this appeal (Govt. Br. 2).

2. Phyllis Berliant's husband, Sidney Berliant, was a child of Rae and a beneficiary under her will. He died on February 24, 1972, before certain probate assets of Rae (see Part II *infra*) were distributed, and the assets passed to his wife Phyllis as the sole beneficiary under his will. As a technical matter, Phyllis Berliant is considered a transferee of a transferee of probate assets from Rae Berliant's estate. However, since it is well-settled that transferee liability may be asserted against a transferee of a

transferee, *Estate of Goldsborough v. Commissioner*, 70 T.C. 1077, 1086–1087 (1978), affirmed, 673 F.2d 1310 (4th Cir.1982), Phyllis Berliant will be referred to herein as a transferee as a matter of convenience.

3. For example, the 1971 estate tax return did not include: (1) $59,624.37 in bank accounts, stocks, and bonds which Rae Berliant at her death held in joint tenancy and (2) $106,293.32 in totten trust accounts for which Rae was the sole authorized signatory and trustee (App. 9). As surviving tenants or beneficiaries, Irene Magill, Kraft, and Sidney Berliant took possession and control of most of this property ($145,-391.83) when Rae died (App. 10). Ernest Berliant was evidently disinherited (App. 11).

4. I.R.C. § 6901(a) reads in pertinent part:
SEC. 6901. TRANSFERRED ASSETS.

spect to probate assets they received from Rae's estate; (2) Kraft and Magill were liable under I.R.C. § 6324(a)(2) [5] for unpaid estate tax with respect to non-probate assets which passed to them because of Rae's death; (3) the property in which Rae Berliant held a joint tenancy interest at death and the totten trust accounts for which she was the trustee (see *supra* note 3) were includable in the gross estate under I.R.C. Sections 2040 and 2036, 2037 or 2038 (App. 39–46) as well as 6324(a)(2) which is reproduced in note 5 *supra*; (4) the estate was entitled to deduct fees paid to an attorney in connection with litigation concerning the estate administration; and (5) the late filing of the estate tax return was without reasonable cause so that the addition to tax was proper. Only the first three issues are before this Court on appeal. The government has not appealed the Tax Court's determination with regard to attorney's fees (Govt. Br. 11) and Kraft and Berliant have not challenged the Tax Court's ruling regarding tardy return filing resulting in the addition to tax (Govt. Br. 8). This Court has considered seriously all the arguments raised by the parties in this appeal but will discuss only the important ones.

## II

The government seeks to impose transferee liability on Kraft and Berliant for the value of the following property acquired by them on or after Rae's death (App. 20):

| Description | Date Received | Kraft | Berliant |
|---|---|---|---|
| Stock (probate) | January 1, 1973 | $ 43,000.00 | $43,000.00 |
| Proceeds in dissolution of Clara's Ltd. (an investment company) (probate) | October 1, 1974 | 3,000.00 | 3,000.00 |
| Annuity (non-probate) | August 10, 1965 | 6,027.34 | — |
| Joint tenancy property (non-probate) | Date of death | 35,920.87 | — |
| Totten trust accounts (non-probate) | Date of death | 31,459.04 | — |
| | | $119,407.25 | $46,000.00 |

Preliminary to establishing petitioners' liability as transferees for these taxes under either Section 6901(a) or Section 6324(a)(2), it must be established that Rae in fact owned these assets at the time of her death. If Rae did not own them then, no transferee liability can be imposed. Kraft and Berliant argue that, with only two exceptions,[6] Rae did not own these assets but held them for her children who had given her money to invest for them. Although they cannot trace to particular investments the money they claim the children gave Rae, Kraft and Berliant contend that Rae must have used the children's money since she had virtually no resources of her own with which to amass the sizable estate.

■ In response to similar arguments below by petitioners, the Tax Court found as facts that any contributions made to Rae by her children "were in the nature of gifts

5. I.R.C. § 6324(a)(2) reads in pertinent part:
(a) LIENS FOR ESTATE TAX.—* * *

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
(1) INCOME, ESTATE, AND GIFT TAXES.—
(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—
\* \* \* \* \* \*
(ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes),
\* \* \*
in respect of the tax imposed by subtitle A or B. \* \* \*

\* \* \* \* \* \*
(2) LIABILITY OF TRANSFEREES AND OTHERS.—If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. \* \* \*

6. Petitioners concede their liability as transferees with respect to the Clara's Ltd. proceeds and the annuity (Reply Br. 2).

rather than conveyances in trust for the benefit" of the children (App. 7) and that Rae "supplied all the consideration for the * * * joint tenancy property and totten trust accounts" (App. 10). These findings are amply supported in the record. Neither Rae nor any of the children kept records of the amounts contributed to Rae (App. 7, 39). Rae reported on her individual income tax returns the dividend and interest income from the contributed money; neither her children nor their spouses did (App. 7, 27). The children never questioned Rae about the nature of her investment of their money or in any other way exercised control over the investments (App. 7–8, 27). Because these findings are amply supported by the record and certainly are not clearly erroneous, we must sustain them on appeal. *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; *Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258 (7th Cir.1976).

On appeal, Kraft and Berliant contend that the case of *Mendelson v. Commissioner*, 52 T.C. 727 (1969), supports their claim that the estate assets are actually the children's and not Rae's. However, in *Mendelson* the Tax Court found that the petitioner had not made a gift of her funds, so that her retaking of them did not make her a transferee. Since the Tax Court found that the Berliant children had made a gift to their mother, *Mendelson* has no application here. Therefore, we sustain the Tax Court's finding that Rae owned all the probate and non-probate assets at issue in this proceeding.

7. See table *supra* Part II.

8. § 293. Refunding by Distributees
    If at any time after payment of a distributive share it becomes necessary for all or any part of the distributive share to be refunded for the payment of any claim entitled to be paid from the estate distributed *the probate court upon the application of any interested person shall order the distributee to refund that portion of his distributive share which is necessary to pay the claim.* If there is more than one distributee the court shall apportion among the distributees the amount to be refunded according to the amount received by each of them, but specific legacies need not be

III

In order for Kraft and Berliant to be liable as transferees of probate assets for unpaid estate taxes, there must be a basis under state law or state equity principles for imposing transferee liability. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126. Section 6901(a) merely establishes a procedure for tax collection but does not establish transferee liability. Since Rae Berliant's probate estate was administered under Illinois law, that law governs whether Kraft and Berliant are liable, legally or equitably, for the estate's unpaid taxes. The Tax Court concluded that Kraft and Berliant, as transferees of probate assets, could be held liable for estate taxes up to the value of probate assets received, or $46,000.[7] We agree with this conclusion but in part for different reasons than set forth by the Tax Court.

The Tax Court first decided that Section 293, ch. 3 Ill.Ann.Stat. (Smith-Hurd 1961),[8] provided for transferee liability. In reaching this conclusion, the court relied on the fact that under Section 293 the Illinois Probate Court may order a distributee to return whatever share of his distribution is necessary to pay claims "entitled to be paid from the estate distributed." Since tax claims of the United States are claims entitled to be paid from the estate (Section 202, ch. 3 Ill.Ann.Stat. (Smith-Hurd 1961)), the court reasoned that Kraft and Berliant as transferees are liable to the United States. However, the Tax Court's reasoning is

refunded unless the residue is insufficient to satisfy the claims entitled to be paid from the estate distributed. If a distributee refuses to refund within sixty days after being ordered by the court to do so and upon demand, * * * a civil action may be maintained by the executor or administrator against the distributee * * * for the amount due together with the expenses of recovery including reasonable attorney's fees. The order of the probate court is evidence of the amount due. (Emphasis added.)
The Tax Court noted that it was basing its decision on Illinois statutory law in effect at the time the transfers were made (App. 29 n. 13).

flawed because it did not consider the nature of the transferee liability established in Section 293. By its own terms, Section 293 imposes transferee or distributee liability only when "the *probate* court upon the application of any interested person shall order the distributee to refund that portion of his distributive share which is necessary to pay the claim" (emphasis added). The government contended at oral argument that Section 293's probate court order requirement is a technical requirement relating only to the procedure for collection from the transferee and not to the establishment of transferee liability in the first place. But Section 293 imposes no transferee liability in the absence of an application to the probate court and a probate court order, so that the statute cannot provide a basis for transferee liability absent such an order. There is no indication that the government has applied to the Illinois Probate Court or that the Probate Court has issued an order to Kraft and Berliant to pay the estate taxes. Therefore the government has not met its burden of establishing that petitioners are liable as transferees under Section 293.

██ Alternatively, the Tax Court decided that transferees Kraft and Berliant are liable under Illinois equity principles. The Tax Court is correct in this conclusion. As a matter of equity, Illinois has long imposed on estate transferees liability to creditors of the estate. "Legatees are always compellable to refund in favor of creditors because the latter have a priority of right to satisfaction out of assets." *Union Trust Co. v. Shoemaker*, 258 Ill. 564, 572, 101 N.E. 1050, 1053 (1913); see also *In re Bird's Estate*, 410 Ill. 390, 396–397, 102 N.E.2d 329, 333 (1951); *Snydacker v. Swan Land & Cattle Co.*, 154 Ill. 220, 225, 40 N.E. 466, 468 (1895). In *Shoemaker*, the Illinois Supreme Court analyzed extensively the scope of a creditor's equitable remedy against transferees of an estate's assets. Later cases have merely applied *Shoemaker* to the particular facts at hand without performing further independent analysis. See, *e.g., Olsen v. Hartford Accident and Indemnity Co.*, 368 Ill. 194,

197, 13 N.E.2d 159, 161 (1938). In *Shoemaker*, the claim asserted against transferees of estate assets first arose five years after decedent's death, when judgment was entered in a case in which decedent and his business partners had become parties long before the death. At decedent's death, that claim was only contingent because its maturing depended on decedent's opponents' obtaining judgment, "a contingency which may or may not ripen into a liability and [was] dependent on an event that neither party can control," (Pet. Br. 7). Because *Shoemaker* involved a contingent claim, the Tax Court apparently assumed that the rationale for the decision there to allow recovery by an estate creditor against estate distributees was limited to cases of contingent claims. Since, as the government insists, estate taxes are not contingent liabilities, the Tax Court reasoned that *Shoemaker's* equitable principle should be applied analogously to petitioners' case (App. 32). Petitioners argue that the court erred in extending this equitable principle to cases involving non-contingent claims and contended that the principle must be limited to contingent claims cases.

Both the Tax Court and petitioners view too narrowly the equitable principle explicated in *Shoemaker*. It is clear that the Illinois Supreme Court established a rule with application beyond contingent claims cases. "It is an established doctrine of equity that creditors who have not been guilty of *laches* may pursue assets into the hands of distributees, where distribution has been made without discharging their debts," *Shoemaker*, 258 Ill. at 573, 101 N.E. at 1053. Even assuming that the defense of laches could be asserted against the United States, petitioners do not claim that the government unreasonably delayed in taking action to recover the unpaid taxes. Indeed, on the facts of this case, there is no basis for such a claim. The estate tax return was filed over five and a half years late on December 16, 1971 and omitted substantial assets. See *supra* note 3. Nevertheless the Internal Revenue Service completed its review of the return and filed

a notice of deficiency within approximately two and a half years, on August 22, 1974. (I.R.S. Statutory Notice Statements to Kraft and Berliant.)

Under Illinois equity principles, the government may recover from Kraft and Berliant unpaid estate taxes of Rae Berliant's estate to the value of probate assets each received plus interest.[9]

## IV

The Tax Court also decided that Florence Kraft is liable, under I.R.C. § 6324(a)(2), for unpaid estate taxes to the extent of the date-of-death valuation of non-probate assets she received in connection with Rae Berliant's death.[10] As noted at Part II *supra,* in the Tax Court proceeding Kraft contested liability with regard to the joint tenancy bank property and the totten trust accounts. On appeal, she continues to press only two arguments with respect to these assets. First, she contends that she and not Rae was the owner of the assets so that no transferee liability could arise on Rae's death. This argument has been considered and rejected in Part II.

Second, Kraft contends that her joint tenancy in the bank accounts was not proved because the government has not presented signature cards signed by her and Rae and stating that the accounts are joint with a right of survivorship. Kraft claims that such signature cards are required under Illinois law to establish joint tenancy in a bank account and that since joint tenancy has not been established under Illinois law, the property is not includable in the gross estate under I.R.C. § 2040,[11] and transferee liability cannot arise under I.R.C. § 6324 (*supra* note 5).

■ Kraft misinterprets Illinois law. The Illinois authorities on which Kraft relies state merely that a joint tenancy bank

---

**9.** In its argument before the Tax Court, the government relied exclusively on Illinois Fraudulent Conveyance statutes, Ill.Rev.Stat. ch. 59, §§ 4 and 5 (1972), as a basis for establishing transferee liability under Illinois law (App. 33 n. 16). The Tax Court did not rely on these provisions in reaching its decision but instead relied on Section 293 (*supra* note 8) and the equitable provisions discussed in the text. Because we conclude that transferee liability is based on Illinois equity principles, it is not necessary to decide the government's alternative argument that liability might also be established under Illinois' fraudulent conveyance statutes.

Kraft and Berliant argue that the Tax Court erred in basing its decision on theories not relied on by the government. However, it is well-settled that where, as here, the government was correct in its determination that petitioners were liable for the tax, the Tax Court may approve tax liability even for a reason not relied on by the government. *Helvering v. Gowran,* 302 U.S. 238, 245–246, 58 S.Ct. 154, 157–158, 82 L.Ed. 224. Where, as here, the result of the lower court is correct, it must be affirmed on appeal, even if the lower court relied on the wrong ground or gave the wrong reason for its decision. *Id.; Panter v. Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631.

**10.** The government has not asserted a claim against Phyllis Berliant with regard to the non-probate assets (Govt. Br. 7–8).

**11.** I.R.C. § 2040 reads as follows:

2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

account may only be created when the parties to the account sign a written agreement such as a signature card. *In re Estate of White*, 56 Ill.2d 265, 268–271, 307 N.E.2d 122, 124–125 (1971); *Doubler v. Doubler*, 412 Ill. 597, 600, 107 N.E.2d 789, 790 (1952); *In re Estate of Gubala*, 81 Ill.App.2d 378, 384, 225 N.E.2d 646, 650 (1967); Illinois Law and Practice, Joint Tenancy § 5. None of the authorities state that the only way to prove a joint tenancy in a bank account is by presenting the signature card as evidence. Here the Tax Court noted that Kraft stipulated that at Rae's death she received and took possession and control of the bank accounts titled in her and Rae's names. The court found this behavior inconsistent with the tenancy in common which Kraft now urges on this Court (App. 33 n. 19). Furthermore, Kraft stipulated that these accounts were titled "joint tenants with the right of survivorship and not as tenants in common." *Id.* These stipulations provide sufficient proof that the bank accounts in issue were joint tenancy accounts.[12] The Tax Court was correct in deciding that under Section 6324(a)(2) Kraft was liable to the extent of the $76,467.25 date-of-death value of the non-probate assets (see table *supra*, Part II) she received due to Rae's death, plus interest, for the unpaid estate taxes.

The decisions of the Tax Court involving the estate tax liabilities of Florence Kraft and Phyllis Berliant are affirmed.

---

**12.** The inclusion of the $31,459.04 totten trust accounts is not separately challenged in petitioners' briefs probably because I.R.C. §§ 2036, 2037 or 2038 apply to them as the Tax Court held (App. 40).