ELSIE E. SCOTT, TRANSFEREE OF ASSETS OF THOMAS J. SCOTT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 2165-85.
United States Tax Court
T.C. Memo 1986-566; 1986 Tax Ct. Memo LEXIS 39; 52 T.C.M. (CCH) 1087; T.C.M. (RIA) 86566; November 25, 1986. Lee N. Johnson, for the petitioner. Andrew P. Fradkin, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined that petitioner was liable as transferee of Thomas J. Scott for an income tax deficiency *40 of $25,675.40 and an addition to tax pursuant to section 6654 [1] of $1,967.39. After concessions, the issues for decision are: (1) Whether Thomas J. Scott received unreported taxable income in 1981 and (2) to what extent, if any, petitioner Elsie E. Scott is liable as transferee under section 6901. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Elsie E. Scott (petitioner) resided in Pipestone, Minnesota, when her petition was filed. Petitioner was the mother of Thomas J. Scott (decedent), who died intestate on January 8, 1982. No Federal income tax return was filed by or on behalf of decedent for the taxable year 1981. Decedent was a 23-year old student at St. Cloud State College when he died. His body was discovered on the floor of his apartment by two friends on January 8, 1982. Officers of the Stearns County Sheriff's Department investigated the circumstances surrounding decedent's death. They discovered a loaded *41 shotgun resting against the locked door of a bedroom in decedent's apartment. Detectives searched decedent's residence and, in the locked bedroom, discovered approximately 32 pounds of marijuana, 100 grams of hashish, 2 scales used for weighing and measuring drugs, a large number of "zip lock" plastic bags and a strongbox containing $10,043 in cash. The detectives also found a jar containing $672.56 in quarters and half dollars, a 45 caliber automatic handgun, and two spiral notebooks containing entries in decedent's handwriting. The handgun belonged to decedent's uncle. An autopsy disclosed the presence of various barbiturates in the decedent's body. The spiral notebooks found in decedent's residence contained records of marijuana sales. Entries in decedent's handwriting identified customers by first names or initials, and listed dates, quantities purchased, amounts paid (received by decedent) and amounts owed with respect to certain transactions. The following schedule summarizes the transactions set forth in the larger notebook: Amount
Page
Dates
Quantity
Received
4
4/20-6/3
13
$ 4,890
5
3/24-4/29
49-1/2
18,540
6
5/28-6/24
13
2,725
7
4/24-6/23
9/23
40-1/2
16,230
8
7/22
Total
$42,385
*42 The smaller notebook recorded the following transactions: Amount
Page
Dates
Quantity
Paid
1
9/2-9/29
22-1/2
$11,580
3
9/19-11/9
30
13,400
4
10/11-12/31
3-1/4
1,375
5
10/2-11/20
33
15,325
7 *
10/27-12/16
41-1/2
15,135
9
11/9-12/29
16
5,780
10 *
12/10-12/23
11
2,625
11 *
12/15-12/23
5
3,125
Total
$68,345
The two notebooks recorded total gross receipts of $110,730 from the sale of marijuana in 1981. For large purchases made within the United States, the wholesale price per pound of marijuana varies greatly and is affected by such factors as quantity and location of purchase. Wholesale prices may thus range from $150 to $250. Retail prices are, of course, higher. On October 22, 1981, Stearns County police officers purchased 15 pounds of marijuana for $350 per pound.In 1981, smaller quantities of marijuana sold for $400 or $450 per pound. Decedent's records indicate that he generally charged his customers from $300 to $400 per pound of marijuana. Petitioner *43 and decedent rented a safe deposit box in the Northwestern Bank and Trust Company in St. Cloud, Minnesota. Petitioner accompanied her son to the bank on several occasions to add or remove items from the box. The admission card bearing decedent's name recorded over 20 visits by decedent to the box. The admission card in petitioner's name recorded only a visit of August 5, 1982. On August 5, 1982, petitioner and agents of the Minnesota Department of Revenue entered the safe deposit box and inventoried its contents. The box contained $7,311 in cash. Of this amount, $1,317 consisted of old or rare bills and $53 consisted of silver dollars or half dollars. The old or rare bills and the coins were contained in separate envelopes. The box also contained a $25 Series E savings bond and a .44 magnum revolver.Decedent owned the revolver. The coins and the old or rare bills were petitioner's. At least a portion of the remaining cash had been placed in the box by petitioner for her son's education. The savings bond belonged to decedent's father. The contents of the box were turned over to petitioner. Decedent also maintained a checking account at the Northwestern Bank and Trust Company *44 in St. Cloud. On the date of his death, this account had a balance of $4,005.02. Petitioner regularly dealt in substantial amounts of cash which she used for the support, education and maintenance of her two children, of which decedent was the older. Petitioner regularly withdrew cash from other accounts and deposited it in decedent's checking account. In 1981, deposits into the checking account totaled $11,444. Many of these deposits resulted from the practice of withdrawing funds from decedent's account, spending a portion of these funds, and redepositing the remainder. On February 8, 1982, decedent's account was closed and the balance was paid to petitioner. At the time of his death, decedent possessed a 1979 Ford pickup truck. The truck was purchased by petitioner and decedent for $5,195. Petitioner and decedent jointly held title to the truck. The Stearns County Sheriff's Department confiscated the drugs and related paraphernalia discovered in decedent's apartment. The balance of the property in decedent's possession, which was delivered to petitioner, had the following fair market values in 1982: Item
Value
Petitioner's Residence
12 gauge Overland Shotgun
$ 50.00
45 caliber automatic handgun
500.00
Coins in jar
672.56
Currency
10,043.00
Ford truck
4,200.00
Safe Deposit Box
Old bills
1,317.00
Silver dollars
53.00
Other currency
5,941.00
Savings bond
25.00
Revolver
390.00
Checking Account
Balance
4,005.02
Total
$27,196.58
*45 In his notice of deficiency, respondent determined that decedent's cost of goods sold was 50 percent of his gross receipts and that his 1981 income from the sale of narcotics was $59,690. Respondent has revised his computation of decedent's income to accurately reflect the figures found in decedent's notebooks and, after concessions, now contends that petitioner is liable as a transferee of cash and property of Thomas J. Scott in the amount of $20,507.02. Petitioner has conceded that Thomas J. Scott had $135.93 of interest income in 1981, and concedes that if decedent was liable for income tax in 1981, he was subject to the addition to tax imposed by section 6654. ULTIMATE FINDINGS OF FACT Decedent had net unreported income from the sale of marijuana in 1981. Petitioner is the transferee of decedent's cash and property totaling $10,483. OPINION Respondent now contends that, in 1981, decedent had net income of $55,842 from the sale of narcotics and argues that, as a transferee of decedent's assets, petitioner is liable for a part of decedent's deficiency and the addition to tax imposed by section 6654. Petitioner maintains that respondent's determination of decedent's *46 income is arbitrary and erroneous. She also contends that respondent incorrectly relied on decedent's records instead of resorting to net worth analysis. Finally, petitioner argues that evidence introduced at trial does not support respondent's determination of decedent's cost of goods sold, and she asserts that, in any event, she is not a transferee of certain assets in decedent's possession on the date of death. The Deficiency
Petitioner has introduced no evidence suggesting that respondent's determination is incorrect. She instead maintains that respondent's determination is arbitrary and erroneous because respondent has not introduced evidence sufficient to demonstrate the correct amount of decedent's income in 1981. As a general rule, the taxpayer bears the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Although, as discussed below, respondent must prove all other elements of transferee liability, he need not prove that the transferor was liable for tax. Sec. 6901(a); Rule 142(d), Tax Court Rules of Practice and Procedure. Thus, in the typical case, the Court will not look behind *47 the statutory notice to examine evidence supporting the Commissioner's determination of a deficiency. Shriver v. Commissioner,85 T.C. 1, 3 (1985), on appeal (7th Cir., Dec. 8, 1985). In cases of unreported illegal income, however, the Court has recognized an exception to this rule where the Commissioner has rested on his presumption of correctness without introducing direct or substantive evidence in support of his determination. Shriver v. Commissioner,supra;Dellacroce v. Commissioner,83 T.C. 269, 283 (1984); see Jackson v. Commissioner,73 T.C. 394, 400 (1979). Respondent does not rest on his presumption of correctness in this case. Petitioner concedes that decedent was a "retail dealer of marijuana and hashish." Decedent's apartment contained a substantial amount of marijuana, loaded guns, approximately $10,000 in cash, and records of decedent's drug dealings. Respondent has clearly connected decedent to the income that forms the basis of the notice of deficiency; petitioner must therefore prove that respondent's determination was erroneous. Petitioner asserts that respondent's reliance on decedent's *48 notebooks was incorrect, but offers no evidence in support of this assertion. She simply argues that the notebooks are not sufficiently detailed to support respondent's determination. Although the notebooks identify customers by initials or first names, generally omit decimal points, and are not as clear and explicit as the records of most legitimate businesses, we are persuaded that they contain a handwritten record of decedent's profitable career as a narcotics dealer. Evidence of the retail price of marijuana in St. Cloud is strikingly consistent with our analysis of decedent's receipts. Steven J. Mund, a Stearns County Deputy Sheriff, testified without contradiction that marijuana sold for $400 or $450 per pound in 1981. Decedent's records suggest that he generally charged his customers from $300 to $400 for a pound of marijuana.Respondent made careful use of decedent's notebooks in arriving at his determination. He omitted from his computation sales that apparently occurred in 1982 [2] and made no effort to reconstruct receipts not recorded in the notebooks.We conclude that respondent's analysis of decedent's records was not arbitrary or erroneous. *49 Petitioner also argues that respondent erred in declining to consider the value of decedent's assets at the time of death. Petitioner maintains that, if decedent had actually realized $110,730 from sales of narcotics in 1981, decedent's estate would have been considerably larger. Although respondent might have chosen the net worth method of income reconstruction, he was under no obligation to do so. Respondent may use any reasonable means to reconstruct decedent's income, United States v. Johnson,319 U.S. 503, 517-518 (1943); Jackson v. Commissioner,73 T.C. at 403, including decedent's records, Funk v. Commissioner,29 T.C. 279 (1957), affd. on this issue 262 F.2d 727 (9th Cir. 1958).In Funk v. Commissioner, we held that the Commissioner's direct method of proof (taxpayer's records) was more accurate than the indirect method (net worth) proposed by the taxpayer. We also stated that the net worth method is acceptable where other, more precise methods are unavailable. In this case, we are persuaded that respondent's reliance on decedent's notebooks was preferable and justified. Finally, petitioner contends *50 that respondent incorrectly determined decedent's cost of goods sold. Although decedent's notebooks contain no evidence of the amount he expended to acquire his inventory, respondent allowed a deduction for cost of goods sold amounting to 50 percent of decedent's gross receipts. Petitioner has presented no evidence suggesting that this determination was incorrect. Respondent's expert, Richard Ripley, a Special Agent of the Drug Enforcement Administration, testified without contradiction that the wholesale price of marijuana is affected by such factors as quantity and location of purchase, and noted that wholesale prices thus range from $150 to $250 per pound. Respondent's determination is consistent with this evidence and, in the absence of any evidence to the contrary, is not unreasonable. Petitioner as Transferee
Section 6901(a)(1)(A)(i) authorizes the assessment of transferee liability, at law or in equity, in the same manner as the liability for income taxes. This provision does not create a new liability, but rather provides a summary remedy for enforcing the existing liability of the transferor. Coca-Cola Bottling Co. of Tuscon v. Commissioner,334 F.2d 875, 877 (9th Cir. 1964), *51 affg. 37 T.C. 1006 (1962); Mysse v. Commissioner,57 T.C. 680, 700-701 (1972). The existence and extent of transferee liability is a question of State law. Commissioner v. Stern,357 U.S. 39, 45 (1958); Scott v. Commissioner,70 T.C. 71, 79 (1978); Pierce v. Commissioner,61 T.C. 424, 432 (1974). The elements of such liability are: (1) a transfer of property to petitioner, (2) for inadequate consideration, (3) when the transferor is insolvent, or causing the transferor to become insolvent, (4) when the transferor owes tax, and (5) respondent must establish the value of the property transferred. Moran v. Commissioner,45 T.C. 528, 529-530 (1966). Minnesota law determines the existence and extent of petitioner's liability as a transferee of decedent's assets. State law also determines the existence and extent of interest on the transferred assets from the date of transfer to the date of the notice of deficiency; section 6601 provides for interest on the deficiency thereafter. Estate of Stein v. Commissioner,37 T.C. 945, 960-961 (1962). Decedent died intestate without *52 spouse or children; under State law, his assets were to be distributed to his surviving parents. Minn. Stat. Ann. sec. 525.16 (West 1975). The parties agree that all assets in decedent's possession on the date of death were delivered to petitioner, his mother. Minnesota law provides that creditors may proceed against assets of a deceased person that have been distributed to the next of kin. Minn. Stat. Ann. sec. 573.06 (West 1947). Minnesota law also provides for interest at a rate of 6 percent on any legal indebtedness.Minn. Stat. Ann. 334.01 (West 1966). Petitioner does not dispute the applicability of these state statutes. Because petitioner's liability for decedent's deficiency is limited to the value of decedent's transferred assets, we must determine the value of decedent's cash and property in petitioner's possession. Respondent now contends that only $20,507.02 was transferred to petitioner as a result of decedent's death.Respondent concedes that the following items already belonged to petitioner or to other members of decedent's family: Item
Value
45 cal. automatic handgun
$ 500.00
Coins in a jar
672.56
Ford truck
4,200.00
Old bills
1,317.00
Silver dollars
53.00
Series E savings bond
25.00
Total
$6,767.56
*53 These items thus were not transferred to petitioner as a result of her son's death.Respondent maintains that petitioner is a transferee of the following items of cash and property: Item
Value
Cash found in apartment
$10,043.00
Checking account balance
4,005.02
Cash in safe deposit box
[3] 5,941.00
Shotgun
50.00
Revolver
390.00
Total
$20,429.02
Petitioner, in turn, does *54 not deny that cash and property totaling $10,483 were transferred to her. This consists of the $10,043 in cash that was found in decedent's apartment, decedent's shotgun, and decedent's revolver. Thus, only two items remain in issue: (1) the $4,005 balance in decedent's checking account, and (2) the $5,941 in cash found in the safe deposit box. Petitioner closed out decedent's checking account on February 2, 1982, and a cashier's check in the amount of $4,005.02 was issued to her on that date. On August 5, 1982, the Minnesota Department of Revenue delivered the contents of the safe deposit box to petitioner. Petitioner argues, however, that the funds in decedent's checking account and in the safe deposit box were her property, and maintains that they were simply returned to her as a result of her son's death. Petitioner testified that she withdrew cash from an account in Pipestone and delivered this cash to her son for his education, maintenance, and support. Decedent subsequently deposited these funds in his own account, from which he drew as necessary to meet his living expenses. Petitioner's testimony was credible. We are persuaded that some, if not all, of the funds in *55 decedent's account belonged to petitioner. Respondent, who has the burden of proving all elements necessary to establish transferee liability other than the amount of the transferor's tax, not proven that the funds were decedent's. Respondent argues that, because decedent was the only person with power of signature over the checking account, funds in the account became property of decedent's estate from which his creditors could recover. Respondent presents no Minnesota authority in support of this proposition, and we have not located any Minnesota case holding that all funds in a checking account become, by operation of law, property of the person with power of signature over the account. At most, the presence of funds in an account may raise a presumption that they are owned by the person whose name is on the account. [4] Even if such a presumption exists, petitioner's testimony was an effective and persuasive rebuttal that respondent failed to overcome.
Respondent has also failed to prove that the cash found in *56 the safe deposit box was decedent's. Petitioner and decedent rented the box jointly. Petitioner testified that she accompanied her son to the bank on numerous occasions and often placed cash in the box. Again, her testimony was credible. Although the bank's records reflect only her visit of August 5, 1982, it is probable that previous visits by petitioner and decedent to the box were recorded only on the admission card bearing decedent's name. Respondent has again failed to carry his burden of proof. We conclude that petitioner was the transferee of $10,483 of decedent's cash and property. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
*. Certain entries on pages 7, 10 and 11 describe transactions that occurred in 1982 and are therefore omitted from this schedule.↩
2. Respondent failed to omit one $955 payment that, according to page 7 of decedent's small notebook, was received on January 3, 1982. Decedent's notebooks record gross receipts in 1981 of $110,730, not $111,685 as claimed by respondent, and respondent's determination of decedent's net income should be modified accordingly.↩
3. The parties have stipulated that the safe deposit box contained $7,311 in cash and that, of this amount, $1,370 consisted of old bills, rare coins, and silver dollars. Respondent conceded that the $1,370 was not transferred to petitioner as a result of decedent's death. Therefore, $5,941 remains in issue. In respondent's new computation of the value of the cash and property transferred to petitioner, however, he states that $7,389 was found in the safe deposit box and concludes that $6,019 remains in dispute. The record is confusing on this point. The parties' two stipulations conflict and the evidence that may support respondent's determination (and the original stipulation) is ambiguous. In view of this ambiguity, we accept the parties' more recent stipulation.↩
4. See Magill v. Commissioner,T.C. Memo. 1982-148, affd. sub nom. Berliant v. Commissioner,729 F.2d 496↩ (7th Cir. 1984).