**UNITED STATES of America,**
**Plaintiff,**

v.

**Elizabeth BARTLETT, Individually, as Executrix of the Estate of Charles E. Grimes, and as Trustee of the Elizabeth J. Bartlett Family Trust; Beverly J. Drummond, Carl E. Grimes, David C. Grimes, and Alan Grimes, Defendants.**

**No. 99–CV–2060.**

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Feb. 19, 2002.

Barbara E. Seaman, U.S. Department of Justice, Washington, DC, for Plaintiff.

Maurice J. Barry, Jr., Barry, Skelton & Hoekstra, Bloomington, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

On August 16, 2000, the Plaintiff filed an Amended Complaint (# 17) in this matter seeking to reduce to judgment the unpaid portion of the assessment of transferee gift tax and statutory additions made against the estate of Charles E. Grimes. Charles

E. Grimes was the husband of Elizabeth Bartlett and the father of the remaining defendants. On January 29, 30, and 31, 2001, the court held a bench trial on the Plaintiff's claims. As ordered by the court at the trial's conclusion, the parties have each submitted proposed findings of fact and conclusions of law. The court has thoroughly reviewed the parties' respective filings, as well as a transcript of the proceedings. For the following reasons, judgment is entered in favor of the Plaintiff and against Defendants.

### EVIDENCE PRESENTED

The tax liability which forms the basis of this action arose as the transferee gift tax liability of Charles E. Grimes ("Charles") upon the death of his mother, Ressie Grimes ("Ressie"). Ressie and Jesse Grimes ("Jesse"), Charles' father, executed a joint and mutual will on January 2, 1975, and a codicil to that will on March 20, 1979. On Ressie's death, the joint will and codicil created a life estate for Jesse, Ressie's surviving spouse, in the real property passed under the will. Charles was entitled to a remainder interest in six of the nine parcels of real estate in which Jesse held a life estate.

On December 25, 1980, Charles died testate, and his will was admitted to probate in DeWitt County, Illinois on January 14, 1981. Elizabeth Bartlett ("Elizabeth"), widow of Charles, was appointed executrix of Charles' estate under their joint and mutual will. On Form 706, the United States Estate Tax Return, the Estate of Charles included in its gross estate only the value of one half of the remainder interest in the parcels of property passed upon Ressie's death.

On June 22, 1984, the Internal Revenue Service ("IRS") sent a Notice of Deficiency to Jesse. This notice of deficiency pertained to a gift tax deficiency of $164,308.43 for the year 1979. This deficiency arose as a result of the contractual obligation under Illinois law imposed on Jesse under the joint will to make a present gift to Charles of his remainder interest in the six tracts of land in which Jesse was to have only a life estate. The IRS valued the remainder interest Jesse gifted to Charles at $628,698.45. Jesse challenged the gift tax deficiency in the United States Tax Court. Jesse died on November 2, 1985, while the case was still pending.

On June 2, 1984, the IRS sent a Notice of Deficiency to the Estate of Charles because the remainder interests in real estate which resulted in the gift tax deficiency should have been included in the gross estate of Charles.[1] As a result of this notice of deficiency, the Estate of Charles filed a petition with the United States Tax Court. To expedite the disposition of the Tax Court cases filed by the Estate of Jesse and the Estate of Charles, the parties entered into a Stipulation to Be Bound. In the stipulation, the parties agreed that the resolution of the case brought by Jesse would control the issue of whether the Estate of Charles was required to include in its gross estate the remainder interest in real property formerly owned by Jesse alone or by Jesse and Ressie jointly. On August 3, 1987, the Tax Court found that the IRS correctly attributed $160,136.00 in gift tax liability to Jesse as a result of the present gift of the remainder interest in real property to Charles upon the death Ressie.[2] This de-

---

1. Also in this notice of deficiency, issues were raised concerning the contractual nature of the mutual will of Charles and Elizabeth, the estate's entitlement to a special valuation of farmland pursuant to 26 U.S.C. § 2031A, and the availability of a marital deduction.

2. *See Estate of Grimes v. Commissioner,* 54 T.C.M. (CCH) 1 (1987).

cision was upheld by the Seventh Circuit Court of Appeals on July 13, 1988.[3]

Prior to the decision of the Seventh Circuit, Elizabeth quit-claimed to the Elizabeth J. Bartlett Family Trust all of her interests in the real property devised to her under the mutual will she executed with Charles. Elizabeth testified that she established this trust "to get away from will and probate ... and avoid all of this mess we're in now." The Certificate of Trust for the Elizabeth J. Bartlett Family Trust allows Elizabeth, as trustee to "sell at public or private sale or to exchange any property which may at any time be in their hands, without application to court, on any terms which they may consider advisable or proper, including terms involving an extension of credit for any period of time and with or without security."

Pursuant to the Stipulation to be Bound, the Estate of Charles was required to include in its gross estate the value of the remainder interest Jesse was deemed to have given Charles. Before computing the estate tax deficiency of the Estate of Charles after the decision of the tax court, the IRS allowed the estate an estate tax deduction pursuant to 26 U.S.C. § 2053. This deduction was allowed because of the Estate of Charles' liability as transferee for the gift tax deficiency due from the Estate of Jesse. As part of the agreement between the estate and the IRS to allow

the deduction, Elizabeth was required to execute a Form 870, Waiver of Restriction on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. By signing the Form 870, Elizabeth accepted liability as transferee of Jesse's gift tax deficiency.[4] As a result of this acceptance, the transferee gift tax liability of $160,136.00 and interest in the amount of $298,082.12 were assessed against the Estate of Charles. Following this assessment, notice of the assessment and a demand for payment was made upon Elizabeth as executrix of Charles' estate.

On April 3, 1989, the Tax Court entered a decision with respect to the case brought by the Estate of Charles.[5] The Tax Court found a deficiency of $159,054.00 in estate taxes owed by the estate. This deficiency reflected an allowance by the IRS of a deduction from the estate tax liability of the transferee gift tax that Elizabeth, as executrix of the Estate of Charles, agreed to pay. This estate tax deficiency was assessed against Charles' estate on August 7, 1989. Subsequent to the decision of the Tax Court, Charles' estate sought administrative relief pursuant to Regulation § 301.9100–1T with respect to the assessment of these estate taxes. This relief was granted by the IRS. As a result, all but approximately $10,000.00 of the estate tax deficiency of Charles' estate was abated. This administrative relief did not include the transferee gift tax liability owed by Charles' estate.[6]

---

**3.** *See Grimes v. Commissioner,* 851 F.2d 1005 (7th Cir.1988).

**4.** The Form 870 read as follows: This represents the liability of the Estate of Charles E. Grimes, Deceased, Elizabeth J. Bartlett, Executrix, as transferee of the assets of Jessie [sic] L. Grimes for gift tax due from Jessie [sic] L. Grimes (now deceased).

**5.** *Estate of Grimes v. Commissioner,* 56 T.C.M. (CCH) 890 (1988), *aff'd* in *Bartlett v. Commissioner,* 937 F.2d 316 (7th Cir.1991).

**6.** As a result of this administrative relief granted with regard to the estate tax deficien-

cy, the IRS issued a closing agreement relative to the estate taxes. Elizabeth submitted a check for the additional estate taxes in the amount of $10,287.79 on May 18, 1992. The check was drawn on the account of the Elizabeth Bartlett Family Trust and was signed by Elizabeth as trustee. Thus, the total amount in estate taxes paid by the Estate of Charles was $50,636.63. This consisted of an initial payment of $40,348.84 and this subsequent payment of $10,287.79. On April 12, 1995, the IRS erroneously refunded $165,005.46 to the Estate of Charles Grimes. This refund consisted of all of the estate tax paid by the estate and $114,368.83 of interest thereon.

On April 17, 1989, the IRS filed a proof of claim with the DeWitt County Probate Court in the amount of $458,218.72. This amount consisted of the Estate of Charles' transferee gift tax liability in the amount of $160,136.60 plus interest in the amount of $298,082.12. Elizabeth testified that she saw the proof of claim filed by the IRS and immediately called her attorney. No proof of claim was filed with regard to the estate tax liability of the Estate of Charles. On September 15, 1989, the Probate Court entered an Order allowing the IRS claim for transferee gift tax liability and interest.[7]

Revenue Officer Maureen Maloney testified that the IRS did not actively seek collection of the allowed claim. Rather, the case was monitored by the Insolvency Unit and Special Procedures Branch of the Collection Division of the IRS in Springfield, Illinois. Maloney testified that monitoring the case consists of pulling the case for periodic reviews to insure that the case is still pending in the Probate court and sending periodic status letters to the probate attorney asking for the status of the proceedings. According to Maloney, no collection efforts were made because the IRS cannot enforce collection after the claim is filed in the probate court. The IRS simply waits to be paid through distribution of the assets of the estate once probate is complete. A transaction code of "520" is entered into the computer system to indicate that no collection action is to be initiated. This transaction code indicates that the claim is in "litigation."

The claim filed in the Estate of Charles was monitored by Revenue Officers Joe Nolan, Karla Bartels, and Maureen Maloney. Bartels testified that she reviewed a status letter which was sent to Maurice Barry ("Barry"), counsel for Defendants, on February 15, 1995. Bartels indicated that she received Barry's name from the circuit clerk's office in the county in which the probate estate was pending.[8] Bartels testified that this letter was a "request for payment, or at least a status of when we [the IRS] can expect payment," and the letter served as a reminder to the attorney that payment was owed.

Bartels testified that she received a letter from Barry in response to the status letter. This letter stated as follows:

I have received your letter of February 15, 1995, and upon review of all relevant documents am somewhat confused. I was under the understanding that the contingent liability has been resolved upon proper correction being made. I understand you had dealt with Rex L. Schaeffer[9] of our office who was successful in obtaining a relinquishment of the indebtedness.[10] If the records I have reviewed are incorrect or if you have access to additional information please transmit same to my office as

---

7. After Charles' death, his son David Grimes ("David") moved into the farm house which formerly belonged to his parents and made annual rental payments to Elizabeth in the amount of $50,000. David was the executor of Jesse's estate. David testified that he was aware of the holdings of the United States Tax Court and the Seventh Circuit Court of Appeals regarding the gift tax owed by Jesse's estate. However, David did not pay this gift tax on the advice of his attorney.

8. Barry became involved in the probate matter on May 7, 1993.

9. Rex Schaeffer ("Schaeffer") testified before the court in this matter. The court had an opportunity to observe the manner and demeanor of the witness as he testified during trial. This court found Schaeffer's testimony to be inconsistent and contradictory. Moreover, the court concluded that Schaeffer's testimony was not credible.

10. Elizabeth testified in her deposition that Schaeffer represented her in the tax court matter, not the probate matter.

soon as possible so that we may address this problem accordingly.

In response to this letter, Bartels sent a second letter to Barry, stating:

We are in receipt of your February 28, 1995, letter. A review of our file still shows an outstanding liability on the above case for gift taxes. A proof of claim was filed April 17, 1989, in the amount of $458,218.72. The executrix agreed to the assessment of this deficiency. I believe the liability you refer to in your letter was for the estate tax. This has been abated. Enclosed please find a transcript for the gift tax liability. Again, we would request an update on the status of this case and the date you will pay the related proof of claim....

Bartels further testified that she had phone conversations with Schaeffer and Barry regarding the gift tax liability. Revenue Officer Maureen Maloney testified that she also sent a status letter to Schaeffer on May 7, 1997. According to Maloney, she had several conversations with Schaeffer in which he expressed his belief that the gift tax liability of Charles' estate had been abated with the resolution of the estate tax issue.

As a result of reorganization of the IRS, the case involving Charles' estate was transferred to the IRS collection division in Chicago, Illinois in 1998. Probate was still open at this time. On January 20, 1998, David Choi, an attorney at the District Counsel's office in Chicago, sent a letter to Schaeffer regarding the continued liability of Charles' estate for the transferee gift tax. This letter set forth in detail the basis for the estate's liability. In response to the letter, Schaeffer asserted that the closing letter issued to Charles' estate in 1995 resolved the gift tax issue, that the final payment of the estate tax covered the gift tax as well, and the estate had been closed. However, the estate was not closed at that time.

The docket sheet from the probate court indicates that Barry failed to appear on numerous occasions before the probate court. In April 1998, Barry requested a hearing for a final accounting of the probate estate. At a subsequent hearing in August 1998, Barry indicated that there were problems with the final accounting. On October 15, 1998, Elizabeth filed a Motion for Leave to File Final Accounting and Report Without All Corresponding Documentation. In the motion, Elizabeth asserted that the probate proceedings involved a significant claim by the IRS for estate taxes, and all claims to the estate had been paid. Elizabeth made no reference to the allowed claim for gift taxes. On October 30, 1998, the Probate Court granted Elizabeth's motion, discharging her as executrix and closing the estate.

In January 1999, the case was assigned to Karen Van Note ("Van Note") for collection. Van Note testified that, when assigned a case, she looks to see whether an assessment is correct, whether a notice has been issued, and whether assets to affect collection are available. Based upon the Certificate of Assessments and Payments, Van Note determined that an audit deficiency in the amount of $160,136.60 and interest in the amount of $298,098.12 were assessed and a first notice issued on March 22, 1989. Van Note testified that this first notice, which consists of a demand for payment and contains the balance due, was sent to the address on the account for the Estate of Charles Grimes. According to IRS records, this address never changed from Rural Route 2, Farmer City, Illinois, the former residence of Charles and Elizabeth and the current residence of David.

Van Note checked the files of the probate court action to determine whether the proof of claim filed by the IRS was in the file and whether probate was still open

because the deficiency had never been paid. Van Note learned that probate had been closed without a final accounting having been filed and attempted to obtain a copy of the final accounting from Elizabeth and Schaeffer. However, neither person ever provided this documentation. Darlene Ederer, an employee of the Department of Justice Tax Division, also testified that she was unable to locate a final accounting of the estate of Charles after reviewing the complete probate file with the assistance of the clerk's office. Ederer was also unable to locate any notice of hearing served on Plaintiff with respect to a hearing on the motion to close the estate.

On March 1, 1999, Elizabeth remitted to the IRS a payment in the amount of $160,136.00, requesting that this amount be applied to the gift tax liability. On April 30, 1999, Plaintiff filed a Verified Petition for Relief from Order and to Reopen the Probate Estate of Charles E. Grimes and Reinstate Elizabeth J. Bartlett as Administrator of Said Probate Estate. After a hearing, the Probate Court ordered the probate estate reopened. As of June 30, 2000, Van Note testified that the amount due from the estate consisted of assessed interest in the amount of $298,082.12, accrued interest in the amount of $772,467.98, and accrued penalty of $40,034.15.

On August 16, 2000, the Plaintiff filed an Amended Complaint in this matter seeking to reduce to judgment the unpaid portion of the assessment of transferee gift tax and statutory additions, made against the estate of Charles E. Grimes on March 22, 1989. Plaintiff seeks to collect the amount owed by foreclosing liens that arose in favor of Plaintiff and selling this property[11] and to hold Elizabeth Bartlett, the

11. The parties have stipulated to twelve tracts of land that is chargeable with the debt of the

executrix of Charles Grimes' estate, personally liable for the debt.

## ANALYSIS

I. Motion to Amend Complaint to Conform to the Evidence

■ On August 6, 2001, Plaintiff filed a Motion to Amend the Complaint to Conform to the Evidence (# 40). Plaintiff seeks to amend its complaint to plead a cause of action for breach of fiduciary duty. Plaintiff contends that the testimony of Schaeffer "introduced previously unknown facts that strongly support a cause of action for breach of fiduciary duty since, under Illinois law, Elizabeth Bartlett may be responsible for mismanagement by her agents."

Rule 15(b) of the Federal Rules of Civil Procedure provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "The decision as to whether the issue which is the subject of the tendered amendment was actually tried by the express or implied consent of the parties, however, rests within the district court's discretion." *Ippolito v. WNS*, 864 F.2d 440, 456 (7th Cir.1988). "A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." *Ippolito*, 864 F.2d at 456, *quoting Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir.1986). The testimony of Schaeffer, whom this court has already found to not be a credible witness, was introduced as a result of this court allowing Defendants to amend their answer to plead lach-

Estate of Charles.

es and equitable estoppel as affirmative defenses. It is apparent to this court that the testimony of Schaeffer was introduced in a last minute attempt to provide some sort of defense to this action. While his testimony may have tended to support a breach of fiduciary duty claim, this court will not imply the Defendants' consent to try such a claim from his testimony. Therefore, Plaintiff's Motion to Amend the Complaint to Conform to the Evidence (# 40) is DENIED.

## II. Applicable Law

Plaintiff seeks $1,215,519.86 plus statutory interest from August 2, 2001, from Estate of Charles Grimes. This amount is comprised of statutory interest and a failure to pay penalty. The estate's liability for the gift tax, as well as the amount of the tax, including interest, are no longer at issue in this case. Prior to trial, this court granted Plaintiff's motion in limine finding that the decisions of the United States Tax Court and the Probate Court's order allowing Plaintiff's claim are entitled to preclusive effect under the doctrine of res judicata. The claim allowed by the Probate Court consisted of the original gift tax liability in the amount of $160,036.00, plus assessed interest in the amount of $298,082.12, as well as statutory accrued interest.

### A. Imposition of Interest and Failure to Pay Penalty

Pursuant to 26 U.S.C. § 6601, "[i]f any amount of tax ... is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid." This interest is calculated pursuant to the provisions of 26 U.S.C. § 6621(a)(2). Interest, for purposes of collection, assessment, and payment, is treated in the same manner as the original unpaid tax. 26 U.S.C. § 6601(e).

In addition to interest, Plaintiff seeks a failure to pay penalty in the amount of $40,034.15. Failure to pay penalties are governed by 26 U.S.C. § 6651. Pursuant to this provision of the Internal Revenue Code, a failure to pay tax on or before the date prescribed for payment results in a penalty of "0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent of the aggregate."[12] 26 U.S.C. § 6651(a)(2).

▮ Defendants dispute the amount of interest and penalties to which Plaintiff is entitled. Defendants contend that this court must read 26 U.S.C. § 6324(b) together with 26 U.S.C. § 6601(f)(1). In support of this contention, Defendants cite *Poinier v. Commissioner of Internal Revenue*, 858 F.2d 917 (3rd Cir.1988) and *Baptiste v. Commissioner of Internal Revenue*, 29 F.3d 433 (8th Cir.1994). However, these cases involve the assessment of a different type of interest than that sought in the instant case. In *Poinier* and *Baptiste*, the Commissioner sought the imposition of independent interest on the transferee arising from the time of service of a notice of transferee liability under 26 U.S.C. § 6901. As discussed above, this is not the type of interest sought by Plaintiff.

12. The statute provides a reasonable cause exception to the failure to pay penalty, in that a person cannot be held liable for this penalty if the failure is "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). Defendants do not argue that this exception is applicable to the instant case. Even if such an argument were advanced, this court finds that Defendants failed to establish that the failure to pay the transferee gift tax liability of the Estate of Charles Grimes was reasonable for the reasons stated below regarding the imposition of personal liability on Elizabeth.

## B. Reduction of Assessments to Judgment

In a somewhat unclear fashion, Defendants first argue that the tax assessments made against the Estate of Charles cannot be reduced to judgment by this court because (1) the Estate of Charles Grimes is not named as a party to this litigation; (2) Plaintiff should have proceeded in probate court; and (3) Defendants did not receive proper notice of the claim or were confused by documentation received by the IRS.

█ While the Estate of Charles Grimes is not named as a defendant in this litigation, Elizabeth Bartlett, in her capacity as Executrix of the Estate of Charles E. Grimes, is a named defendant. Pursuant to Fed.R.Civ.P. 17(b), the capacity to sue or be sued when acting as an executor is governed by the law of the state where the district court is held. In Illinois, "a claim against an estate must be brought through its executor or administrator, who must be named as a party." *Bank of N. Ill. v. Nugent,* 223 Ill.App.3d 1, 165 Ill.Dec. 514, 584 N.E.2d 948, 958 (1991). Elizabeth Bartlett is the court-appointed executrix of the Estate of Charles Grimes. Therefore, she is the appropriate party to be sued.

█ Defendants argument that Plaintiff was required to file its claim in the probate court is equally without merit. 26 U.S.C. § 7403(a) provides:

In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, ... may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he as any right, title, or interest, to the payment of such tax or liability.

Defendants cite *Forrest v. Jack,* 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829 (1935) for the proposition that "collection from a claim in an estate is to be made in accordance with state laws governing claims against estates of decedent's persons, at least [to] the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority." This court finds *Forrest,* a case concerning a stock assessment made by the Comptroller of the Currency following the close of an estate, to be inapposite. Further, Defendants argue that "the Plaintiff has a claim against the Estate of Charles E. Grimes which has, as of yet, not been resolved." This is true only to the extent that Elizabeth has failed to pay all but a small percentage of the deficiency owed the Plaintiff. Plaintiff's claim against the estate was allowed by the Probate Court, and Elizabeth was notified of the allowed claim. Had Elizabeth paid the claim at the time it was allowed by the Probate Court, this suit would not have been necessary.

Finally, Defendants seem to argue that Plaintiff is not entitled to a judgment against Defendants based upon some exhibits introduced at trial. First, Defendants point to an exchange of letters between Congressman Thomas Ewing and John Wendorff, Assistant District Director for the IRS. Ewing sent a letter to the IRS at the urging of Schaeffer in an effort to remove federal tax liens on estate property. Wendorff responded to this letter with a thorough explanation of the status and history of the Charles Grimes' tax issues. *See* Joint Exhibit 47. Part of this letter states, "Following the allowance of a deduction for the estate's transferee liability, and in light of the Government's complete victory on April 3, 1989, the Tax Court entered a Decision in the Estate of Charles E. Grimes case." In their post-trial brief, Defendants ask "What deduc-

tion is he talking about?" If counsel would have read the entire letter, he would have learned that the deduction Mr. Wendorff references is the estate tax deduction allowed the Estate of Charles Grimes for the estate's liability, as transferee, for the gift tax deficiency due from the estate of Jesse Grimes.

Defendants next question the court as to why the Estate Tax Closing Letter was written in such a manner as to not address the transferee liability incurred from Jesse Grimes' estate. Defendants point out that "the Estate Tax Closing Letter itself identifies what is required to be a credit for the tax liability, that line is zero." Michael Bitner, who served as trial attorney in the Tax Court matter, clarified this matter through his testimony. Bitner pointed out that the reason the aggregate gift taxes payable line indicated "0" on the Estate Tax Closing letter was because "that's a credit that's available to the estate for taxes made on gifts by the decedent. Charles Grimes did not make these gifts. He was not the donor. Therefore, he's not entitled to a credit." The reason the closing letter did not address the pending gift tax liability was because it was an *estate tax* closing letter.

Therefore, despite defense counsel's confusion as to the meaning of certain exhibits, this court finds that it should reduce to judgment the assessment made against the Estate of Charles E. Grimes on March 22, 1989.

### C. Plaintiff's Entitlement to Liens on Real Estate

■ Plaintiff next argues that liens arose in its favor and attached to property of Charles' estate to the extent of the debt owed to Plaintiff. 26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Pursuant to 26 U.S.C. § 6322, the lien arises "at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." To determine whether the property at issue is subject to a tax lien, this court must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as property or rights to property within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999) (citations omitted). "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of the [statute], state law is inoperative," and the tax consequences are controlled by federal law. *United States v. Bess*, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

Illinois law creates rights to property in the decedent's estate until the debts of the estate have been paid. Pursuant to 755 ILCS 5/18–14, "[a]ll the real and personal estate of the decedent and the income therefrom during the period of administration are chargeable with the claims against the estate." Therefore, "under Illinois law, a devisee does not acquire absolute title to real property devised to him under the terms of a will until all indebtedness of the decedent is fully discharged." *Gumm v. Commissioner of Internal Revenue*, 93 T.C. 475, 482, 1989 WL 118714 (1989), *aff'd*, 933 F.2d 1014, 1991 WL 89996 (9th Cir.1991). Under federal law, 26 U.S.C.

§ 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye*, 528 U.S. at 56, 120 S.Ct. 474, *quoting United States v. National Bank of Commerce*, 472 U.S. 713, 719–720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Thus, 26 U.S.C. § 6321 operates to impose a lien on this interest created under Illinois law.

In the instant case, Elizabeth held a life estate in the property disposed of under her joint and mutual will with Charles, even the property she held in her own name before Charles' death. Elizabeth was deemed to have made a gift of a remainder interest to her children at that time. Thus, Elizabeth holds the property subject to the statutory charge created by Illinois law described above. The gift tax liability was assessed against Charles' estate on March 22, 1989. At the time of the assessment, a notice and demand for payment was sent to Elizabeth. As a result, a lien arose under 26 U.S.C. § 6321 on March 22, 1989, and attached to the right held by the estate to property necessary to pay off the debts of the estate. The only debt remaining to be paid by the estate is the debt owed Plaintiff. Thus, a federal tax lien exists as to all property and rights to property of the estate.[13] This includes the real property contained in Stipulation 3 to the parties' Final Pretrial Order.

■ Defendants argue that Plaintiff cannot assert any liens because it failed to provide notice to parties who claim an interest in the parcels of real estate. Defendants cite three cases in support of this argument. Two cases come from Illinois state courts, one concerning a mechanic's lien and one concerning unpaid real estate taxes. Defendants also cite a United States Supreme Court case concerning the sufficiency of publication to known benefi-

ciaries of a common trust fund. This court finds these cases inapposite. 26 U.S.C. § 6323 provides the following types of persons are entitled to notice of a tax lien: purchasers, holders of a security interest, mechanic's lienors, and judgment lien creditors. Defendants are not included in any of these categories. Therefore, no notice was required.

### D. Personal Liability for Elizabeth Bartlett

■ Pursuant to 31 U.S.C. § 3713(b), a "representative of a person or an estate ... paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." Plaintiff seeks to hold Elizabeth personally responsible for the unpaid tax debt of the Estate of Charles, including statutory additions, pursuant to this provision. "The basic elements of § 3713(b) and of its predecessor statutes is that (1) a fiduciary (2) make a distribution which (3) leaves the estate with insufficient funds to pay (4) a debt owing the United States where (5) the fiduciary had knowledge or notice of the debt due to the United States at a time when the estate had sufficient assets with which to satisfy the debt owing to the United States." *United States v. First Midwest Bank/Ill., N.A.*, 1997 WL 675192 *13 (N.D.Ill.1997). The burden is on Elizabeth to show that these elements are not met. *First Midwest*, 1997 WL 675192 at *13.

The first and fourth elements are not disputed. The executor of an estate has a "fiduciary duty to act with the highest degree of fidelity and utmost good faith in handling estate assets." *In re Estate of Coleman*, 262 Ill.App.3d 297, 199 Ill.Dec.

---

13. Because this court has determined that Plaintiff is entitled to a lien on the estate's property, it need not decide whether the Plaintiff is additionally entitled to an equitable lien under Illinois law to the same properties.

475, 634 N.E.2d 314, 317 (1994). *See also First Midwest*, 1997 WL 675192 at \*13 ("The first and fourth elements are clearly met, for an executor may be found liable under § 3713(b) for a failure to pay estate taxes."). Furthermore, as discussed above, there is a debt owed to Plaintiff in unpaid transferee gift tax liability plus statutory additions. With regard to the second element, Elizabeth established the Elizabeth J. Bartlett Family Trust, naming herself as trustee and sole beneficiary. Elizabeth made a distribution by quit-claiming to the Elizabeth J. Bartlett Family Trust her interests in the real property devised to her under the mutual will she executed with Charles, naming herself as trustee and sole beneficiary. This real property was valued at $956,035.94 on the death of Charles Grimes. Furthermore, she retained $50,000.00 per year in annual rental payments from David for the farm house which formerly belonged to Charles.

The third and fifth elements are likewise met. Elizabeth was clearly aware of the Tax Court cases which dealt with the issue of tax liability because she references the cases in her reports to the Probate Court concerning Charles' Estate. In three of these reports, Elizabeth states that "until final determination is made in said Federal estate and gift tax cases ... nothing further can be done to proceed to close this Estate." However, prior to the tax court decisions, Elizabeth established the Elizabeth J. Bartlett Family Trust, making herself trustee and sole beneficiary. Elizabeth testified that she established this trust "to get away from will and probate ... and avoid all of this mess we're in now." It is therefore apparent that she had knowledge of the debt due to Plaintiff at the time when the estate had sufficient assets with which to satisfy the debt. Furthermore, after distributing the estate assets, there were insufficient assets to pay the Plaintiff's claim.

Defendants argue that Elizabeth made significant inquiry regarding the tax liability of Charles' estate, had no reason to know that the claim against the Estate was not resolved with the estate tax issue, and "relied mostly on the advice of her attorney with regard to the handling of Estate matters." Defendants argue that, as a result, Elizabeth cannot be held personally responsible. In support of this argument, Defendants cite *Little v. Commissioner of Internal Revenue*, 113 T.C. 474, 1999 WL 1261491 (1999). In *Little*, the executor had no prior experience with the administration of estates when he received notice of potential income tax liabilities of the estate. The executor forwarded this information to the estate's attorney and asked for advice. The attorney, however, repeatedly and erroneously told the executor that there was no tax liability. When he learned that the taxes were indeed owed, the executor offered to pay the remainder of the estate's assets to the IRS in settlement of the claim. The Tax Court determined that the executor of the estate could not be held personally liable for the debt owed the government because he did not have "the requisite knowledge at the time he was dispersing funds to have knowingly disregarded debts due to the United States." *Little*, 113 T.C. at 481. The court in *Little* described the requisite knowledge to establish personal liability as follows:

> It has long been held that a fiduciary is liable only if it had notice of the claim of the United States before making the distribution. Whether the fiduciary had notice is determined by whether the executor knew or was chargeable with knowledge of the debt. The knowledge requirement of ... 31 U.S.C. § 3713 may be satisfied by either actual knowledge of the liability or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim of the United States.

To be chargeable with knowledge of such a debt, the executor must be in possession of such facts as to put him on inquiry.

*Little,* 113 T.C. at 480.

Unlike the situation in *Little,* this court is convinced that Elizabeth had actual knowledge of the debt owed to Plaintiff. Elizabeth signed a Form 870 acknowledging that the Estate of Charles was liable for the transferee gift tax. As discussed above, Elizabeth also advised the Probate Court between 1984 and 1986 that potential tax liability arising from tax court litigation prevented the estate from being closed. After she learned of the decision of the tax court, she did not take steps to pay the debt. Rather, she transferred the real property to the Elizabeth Bartlett Family Trust. Unlike *Little,* the record does not indicate that Elizabeth did not know about the viability of Plaintiff's claim and blindly relied upon the advise of counsel, particularly in light of the fact that she signed a form acknowledging liability for the tax.

■ Defendants next argue that the doctrines of equitable estoppel and laches preclude a verdict in favor of Plaintiff. The doctrine of equitable estoppel "precludes one party from asserting a claim or defense against another party who has detrimentally altered her position in reliance on the former's misrepresentation or failure to disclose a material fact." *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992). In the Seventh Circuit, a private party is allowed to assert equitable estoppel against the government only "in a very narrow category of cases—when the traditional elements of estoppel are shown and there is affirmative misconduct on the part of the government." *Kennedy,* 965 F.2d at 417. *See also United States v. McGaughey,* 977 F.2d 1067, 1074 (7th Cir. 1993), *cert. denied,* 507 U.S. 1019, 113 S.Ct. 1817, 123 L.Ed.2d 447 (1993). This court

allowed Defendants to amend their answer to include this affirmative defense to provide an opportunity for facts supporting this defense to be adduced at trial. However, this court has found absolutely no basis for finding that the government engaged in affirmative misconduct upon reviewing the record. Therefore, Defendants' equitable estoppel defense must fail.

■ With regard to the doctrine of laches, it is a general rule that "the United State is not subject to the equitable defense of laches in enforcing its rights." *Martin v. Consultants and Adm'rs Inc.,* 966 F.2d 1078, 1090 (7th Cir.1992). Even if the laches doctrine could be applied to the United States based upon the circumstances of this case, its application is not warranted. "Courts are often hesitant to apply laches where a plaintiff has sued within the time period expressly provided by the applicable statute." *Martin,* 966 F.2d at 1090. 26 U.S.C. § 6502(a)(1) provides a ten year statute of limitations to collect on tax after the assessment of the tax. Defendants do not dispute that this action was filed within the statute of limitations. Finally, laches is defense where defendants suffer prejudice as a result of delay. *Reich v. Sea Sprite Boat Co., Inc.,* 50 F.3d 413, 418 (7th Cir.1995). Defendants seem to argue that they are prejudiced due the interest which has been assessed on the unpaid gift tax liability. As discussed above, Defendants were aware of their liability for the transferee gift tax long before Plaintiff initiated this suit. Defendants cannot effectively argue that they suffered prejudice where they could have paid the tax liability at any point prior to the initiation of this action. For all of these reasons, the laches defense is also inapplicable.

E. Liability of Transferees of the Estate

■ Finally, Plaintiff seeks to hold the transferees of Charles' estate liable for the

outstanding debt to the extent of the value of the property they received. As discussed above, Elizabeth received a life estate in the real property devised under her joint and mutual will with Charles. Her children and co-defendants, Beverly Drummond, Carl E. Grimes, David C. Grimes, and Alan Grimes hold remainder interests. To hold these transferees liable for unpaid taxes, "there must be a basis under state law or state equity principles for imposing transferee liability." *Berliant v. Commissioner of Internal Revenue,* 729 F.2d 496, 499 (7th Cir.1984), *cert. denied* by *Kraft v. Commissioner of Internal Revenue,* 469 U.S. 852, 105 S.Ct. 174, 83 L.Ed.2d 109 (1984). "As a matter of equity, Illinois has long imposed on estate transferees liability to creditors ... because the latter have a priority of right to satisfaction out of assets." *Berliant,* 729 F.2d at 500. Furthermore, "[i]t is an established doctrine of equity that creditors who have not been guilty of laches may pursue assets into the hands of distributees, where distribution has been made without discharging their debts." *Berliant,* 729 F.2d at 500, *quoting Union Trust Co. v. Shoemaker,* 258 Ill. 564, 101 N.E. 1050 (1913). As discussed above, there is no basis for a claim of laches against Plaintiff. Therefore, Elizabeth is liable for the total amount of the debt because she holds a life estate in all of the assets of Charles' estate and has distributed to herself over $1,000,000 from the estate.[14] The remainder interest of the co-defendants would be affected by a sale of this property, but they are also liable for the unpaid debt since their vested interests are subject to the debt of the estate under *Berliant.*

Besides raising laches and equitable estoppel arguments, which this court has already ruled are without merit, Defendants argue that "a transferee who is innocent of an underlying continuing obligation generally takes the property free of the alleged prior obligation." In support of this argument, Defendants cite a case concerning the bulk transfer notice provisions of the Uniform Commercial Code and a case concerning the Illinois Consumer Fraud and Deceptive Business Practices Act. This court finds these cases inapposite and Defendants' argument without merit.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion to Amend the Complaint to Conform to the Evidence (# 40) is DENIED.

(2) Judgment is entered in favor of Plaintiff in the amount of $1,215,519.86, plus interest according to law from August 2, 2001.

(3) Plaintiff is entitled to liens on the real property of the Estate of Charles E. Grimes as listed in Stipulation 3 of the parties' Final Pretrial Order.

(4) Elizabeth Bartlett is held personally responsible for the unpaid debt of the Estate of Charles E. Grimes to the extent of the value of the distribution she made.

(5) Elizabeth Bartlett, Beverly J. Drummond, Carl E. Grimes, David C. Grimes, and Alan Grimes are ordered to pay over to Plaintiff the value of the assets they received from the Estate of Charles E. Grimes, including interests in real property and income generated therefrom, to satisfy this judgment.

(6) This case is terminated. The parties shall be responsible for their own costs.

---

**14.** This figure comes from the $50,000 annual rental payments David has paid to Elizabeth since Charles' death.